**THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS**

| | | |
|---|---|---|
| KENNETH JACKSON (#2014-0721274), | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Case No. 22 C 1685 |
| v. | ) | |
| | ) | Hon. Manish S. Shah |
| TOM DART, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Kenneth Jackson brings this Section 1983 action against defendant Sheriff Tom Dart. Plaintiff alleges that he suffered serious injuries from (1) living in unclean cells and (2) inhaling smoke that came out of vents while he was incarcerated at Cook County Jail in 2020–2021. Plaintiff claims that this injury was the result of constitutionally deficient conditions of confinement for which Sheriff Dart was responsible. Defendant moves for summary judgment. For the reasons that follow, that motion is granted.

**I.    Background**

    **A.    Local Rule 56.1 of the Northern District of Illinois**

Local Rule 56.1 governs the procedures for filing and responding to motions for summary judgment in this court. Here, defendant filed a Local Rule 56.1 statement of facts and supporting exhibits, (Dkt. 55), and as required by Local Rule 56.2, served

plaintiff with a "Notice to Unrepresented Litigant Opposing Summary Judgment", (Dkt. 54-1).

Plaintiff tried to comply with Local Rule 56.1. He responded to defendant's submission by filing a response to Defendant's Statement of Facts and supporting exhibits, (Dkt. 61, 62); a Statement of Additional Material Facts, (Dkt. 59); and a Memorandum in response to the motion, (Dkt. 60). Defendant responded to Plaintiff's Statement of Additional Material Facts. (Dkt. 64.)

But plaintiff's responses and factual assertions do not always fully comply with the Local Rules 56.1(d) and (e), in that they in places do not consist of clearly numbered paragraphs and do not cite to the record for certain alleged factual assertions. Where plaintiff has not properly responded to one of defendant's stated facts or has admitted it, the court will accept that fact as true to the extent it is supported by the record. *Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003). But although the court is entitled to demand strict compliance with Local Rule 56.1, *see Coleman v. Goodwill Indus. of Se. Wis., Inc.*, 423 F. App'x 642, 643 (7th Cir. 2011), it will consider the facts identified by plaintiff to the extent that those facts are supported by the record or that plaintiff could properly testify to them. *See Gray v. Hardy*, 826 F.3d 1000, 1005 (7th Cir. 2016) (courts may construe *pro se* submissions leniently). But the court will *not* look beyond the cited material. *See Johnson v. Cambridge Indus., Inc.*, 325 F.3d 892, 898 (7th Cir. 2003) ("[D]istrict courts . . . are not required to scour every inch of the record for evidence that is potentially relevant to the summary judgment motion before them.").

Plaintiff's failure to comply strictly with Local Rule 56.1 is not a basis for automatically granting defendant's motion for summary judgment. *Robinson v. Waterman*, 1 F.4th 480, 483 (7th Cir. 2021). Rather, the court is mindful that the moving party has the "ultimate burden of persuasion" to show entitlement to judgment as a matter of law. *Raymond v. Ameritech Corp.*, 442 F.3d 600, 608 (7th Cir. 2006).

B. **Material Facts**

With the foregoing standards in mind, the following facts are taken as true (unless noted otherwise) for deciding Defendant's motion. Plaintiff entered the Cook County Department of Corrections in 2014. (Dkt. 55 ¶ 3.) At all times relevant to this case, which covers 2020–2021, plaintiff was a pretrial detainee at the jail. (*Id.* ¶ 2.) Defendant is the Sheriff of Cook County. (*Id.* ¶ 5.) Plaintiff does not know the job duties of defendant, and he has never spoken to him. (*Id.* ¶¶ 5–6.)

1. **Relevant Policies**

The Housekeeping and Maintenance Policy sets forth guidelines to ensure that the jail is kept clean and in good repair in accordance with accepted federal, state and county standards. (*Id.* ¶ 80.) Inmates are responsible for keeping cells and living units clean and orderly at all times. (*Id.* ¶ 76.) Inmate workers and sanitation officers provide cleaning supplies and collect trash. (*Id.* ¶ 77.) If a cell needs disinfectant or other cleaning supplies in between scheduled cleaning times, inmates should inform the living unit officer or complete an Inmate Request Form. (*Id.* ¶ 78.) The jail's

3

Sanitation Inspections Policy sets out a plan to identify and correct unsanitary or unsafe conditions or work practices in the department. (*Id.* ¶ 79.)

Detainees can access medical care at the jail through Cermak Health Services by submitting a Health Service Request Form or sick-call slip. (*Id.* ¶ 21.) Cermak Health Services falls under the Cook County Health & Hospitals System and not the department of corrections or the Cook County Sheriff's Office. (*Id.* ¶ 22.)

### 2. Cell Conditions

On April 17, 2020, plaintiff was transferred from an unclean and non-sanitized cell in Div 9 to another equally unclean and non-sanitized cell in Div 10-1B-1213-1 without cleaning supplies.[1] (*Id.* ¶ 8.) Plaintiff asked for cleaning supplies, but he was not immediately provided with them. (*Id.* ¶ 9.) Plaintiff cleaned the cell with a county-issued towel and a bar of soap that he had purchased from the commissary. (*Id.* ¶ 10.) Plaintiff was provided with cleaning supplies, possibly that same night, but that was after he had already cleaned the cell with the towel and soap. (*Id.* ¶ 12.) Plaintiff did not get sick, but he claims that he was harmed because he had to clean the cell without chemicals. (*Id.* ¶ 11.)

On November 2, 2020, plaintiff was relocated to an unsanitary and smelly holding cell in the Cermak Division. (*Id.* ¶ 26.) There was mucus and spit everywhere. (*Id.* ¶ 27.) On November 3, 2020, plaintiff was moved to a cell that was "disgusting" in Tier 2N in Division 8 Cermak Division; there was semen on the walls and window.

---

[1] The cell placements discussed below do not encompass all of plaintiff's cell assignments in 2020-2021. Rather, they consist of only those that plaintiff has complained about in this lawsuit.

4

(*Id.* ¶ 29.) That same day, plaintiff was moved again to an extremely dusty cell in DIV9-2D2187-1. (*Id.* ¶ 31.) When he swept, dust rose up, and when he blew his nose, dust came out of his nose. (*Id.* ¶ 32.) There was also "caked-up feces and stuff" around the toilet. (*Id.* ¶ 33.)

On August 7, 2021, plaintiff was transferred to an unsanitary cell in DIV9-2G-2084-2. (*Id.* ¶ 43.) There was trash on the floor and grime that looked like feces on the walls. (*Id.*) Plaintiff and his cell mate cleaned with bars of soap and county-issued towels because the cleaning products that they were supplied were watered down. (*Id.* ¶ 44.)

On January 12, 2022, plaintiff was moved into a filthy "open dorm" in DIV08-3D without cleaning supplies. (*Id.* ¶ 56; Dkt. 61, pg. 2.) Plaintiff complained, and he was eventually—"after the first couple of days"—provided with cleaning supplies. (Dkt. 55 ¶ 57; Dkt. 61, pg. 2.)

Plaintiff admits that aside from the two cells in the Cermak Division, he was always able to clean the cells discussed herein. (Dkt. 55 ¶ 69; Dkt. 61, pg. 1–2.) He was not able to clean the November 2, 2020 Cermak cell because it was a holding cell, and he was not able to clean the November 3, 2020 Cermak cell because it was a suicide-watch cell. (Dkt. 61, pg. 1–2.) Plaintiff admits that he did not suffer any physical injuries from any of the cell placements at issue in this lawsuit. (Dkt. 55 ¶ 70; Dkt. 61, pg. 2.)

5

### 3. Smoke Exposure

Jonathan Ziman, an Engineer at Cook County Facilities Management, testified via affidavit that when there are "smoke incidents" at the jail, an engineer fully opens the dampers to hasten or expedite the exhaust of the smoke and to allow for the flow of fresh air to the area. (Dkt. 55 ¶ 15.) The Chicago Fire Department responded to the smoke incidents that have affected plaintiff. (*Id.* ¶ 40; Dkt. 61, pg. 3.)

On June 19, 2020, while plaintiff was housed in Div 10-1B-1213-1, he was exposed to smoke that smelled "toxic" coming from the vents. (Dkt. 55 ¶ 13.) The Chicago Fire Department and a Facilities Management engineer responded to the smoke incident, and the engineer opened the dampers. (*Id.* ¶ 14.)

After the smoke incident, plaintiff experienced a bad cough—which he attributes to the smoke exposure—for at least three months, and that the cough has been periodic since then. (*Id.* ¶ 16.) Plaintiff submitted a sick-call slip on July 23, 2020, complaining of intermittent coughing resulting from the smoke exposure incident. (*Id.* ¶ 23.) In a physical exam conducted that day, plaintiff's lungs were noted to be clear to auscultation with no signs of respiratory distress noted. (*Id.* ¶ 24.) No one told plaintiff that his cough was caused by the smoke. (*Id.* ¶ 25.)

Plaintiff internally grieved the incident on the day it occurred, June 19, 2020. (*Id.* ¶ 17.) Plaintiff received a response to his grievance a week later noting that a facility work order has been generated. (*Id.* ¶ 18.) Plaintiff appealed, and on July 9, 2020, he received a response wherein an Inmate Services Director/Designee stated:

6

"Detainees have been lighting wicks against CCDOC rules and procedures. CCDOC is working diligently to alleviate the smoke – despite detainees breaking rules." (*Id.* ¶ 20.) Plaintiff responds that he is not complaining about smoke from detainee drug use in this action. (Dkt. 61, pg. 2–3.)

Plaintiff next complained of an incident where he was exposed to smoke coming through Division 10 vents about a year later, on July 26, 2021. (Dkt. 55 ¶ 37.) On that date, plaintiff was exposed to smoke that smelled "toxic" coming from the vents in the middle of the night. (*Id.* ¶ 35.) The smoke made the whole floor smell, and it hurt plaintiff's lungs and chest and caused him to cough. (*Id.* ¶¶ 35-36.) The fire department responded to the incident. (*Id.* ¶ 39.) Plaintiff and others were evacuated to the chapel. (*Id.* ¶ 41.) Engineer Ziman also opened the dampers. (*Id.* ¶ 39.)

Plaintiff's third and final incident of smoke exposure occurred four months later, on November 28, 2021, when thick, toxic-smelling smoke came from the vents in his cell while he was housed in DIV10-2D-2403-2. (*Id.* ¶ 46.) The smoke caused Plaintiff to cough profusely and experience chest pains. (*Id.* ¶ 47.) Plaintiff was evacuated due to the smoke. (*Id.* ¶ 49.) The Chicago Fire Department and a Facilities Management engineer also responded to the smoke incident, and the engineer opened the dampers. (*Id.* ¶ 48.)

Plaintiff submitted a sick-call slip the next day, November 29, 2021, complaining of chest pains and a cough. (*Id.* ¶ 50.) When plaintiff was examined by nursing the day after that, on November 30, 2021, he denied chest pains, shortness of breath, and coughing at that time. (*Id.* ¶ 51; Dkt. 61, pg. 4.) Plaintiff's nasal drainage

7

was clear; his lung sounds were clear in all lobes; and his throat was without redness and swelling. (*Id.* ¶ 52.) Plaintiff was advised to monitor for shortness of breath, increase fluids, and follow up if needed. (*Id.* ¶ 53.)

On November 28, 2021, plaintiff internally grieved the smoke exposure on that same day. (*Id.* ¶ 54.) On December 16, 2021, plaintiff received a response to his grievance that stated: "Detainees were evacuated off living unit for over 2–5 hours while engineer aired out tier. All detainees who requested medical attention received it." (*Id.* ¶ 55.)

Plaintiff has submitted with his Statement of Additional Facts approximately 50 "Cook County – Reactive Work Orders" dated from April 2020 through January 2022. (Dkt. 62.) Defendant does not dispute that these work orders were generated by the department in response to detainee complaints' of smoke or "smoke smells" coming out of vents across various tiers and cell blocks within Division 10. (Dkt. 62; Dkt. 64.) Engineers typically responded by opening dampers. (Dkt. 62; Dkt. 64.)

### 4. Additional Medical Treatment

Plaintiff has a history of allergies and sinus problems that predates his detention in the jail. (Dkt. 55 ¶ 58.) Plaintiff treats his allergies with triamcinolone nasal spray. (*Id.* ¶ 59.) Every time plaintiff has a cough, he submits a sick-call slip. (*Id.* ¶ 60.) When plaintiff saw nurses in Division 10 about his cough, they listened to his chest and told him that there is nothing wrong. (*Id.* ¶ 61.) When plaintiff sees a doctor, which is about twice a year, he also complains about a cough. (*Id.* ¶ 62; Dkt. 61, pg. 4.)

8

Plaintiff underwent a chest x-ray in February 2024 after complaining of a chronic cough. (*Id.* ¶ 63.) The chest x-ray showed "no focal consolidations or masses. No pleural effusion. No pneumothorax. No acute cardiopulmonary process." (*Id.* ¶ 64.) Plaintiff underwent a CT scan in February 2024 after an alleged assault by another inmate. (*Id.* ¶ 65.) The CT scan showed "[n]o acute intracranial process. Trace fluid in right maxillary sinus. Correlate clinically with sinus disease." (*Id.*) Plaintiff's doctor has recommended he use his inhaler when he has a cough. (*Id.* ¶ 66.)

## II. Legal Standard

On summary judgment, the court must view the record in the light most favorable to the nonmoving party and grant the motion if the movant "show[s] that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Gupta v. Melloh*, 19 F.4th 990, 997 (7th Cir. 2021); Fed. R. Civ. P. 56(a). Summary judgment is warranted "against a party who fails to make a showing sufficient to establish the existence of an element that is essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party seeking summary judgment bears the initial burden of demonstrating an absence of any genuine issue of material fact. *Id.* at 323. If that burden is met, the burden "shifts to the non-moving party to provide evidence of specific facts creating a genuine dispute." *Carroll v. Lynch*, 698 F.3d 561, 564 (7th Cir. 2012). A factual dispute is genuine when a reasonable jury could return a verdict in favor of the nonmoving party. *Id.* Although courts must draw all inferences in favor

9

of the nonmoving party, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Rather, "the nonmoving party must set forth specific facts showing a genuine issue for trial." *Abrego v. Wilkie*, 907 F.3d 1004, 1011–12 (7th Cir. 2018) (citing *Matsushita*, 475 U.S. at 587).

### III. Analysis

Because plaintiff was a pretrial detainee at the relevant time, his claims regarding jail conditions are governed by the objective reasonableness standard found in the Due Process Clause of the Fourteenth Amendment. *Kingsley v. Hendrickson*, 576 U.S. 389 (2015); *Hardeman v. Curran*, 933 F.3d 816, 821–22 (7th Cir. 2019). This standard requires the plaintiff to bring forth evidence that: (1) the conditions in question were objectively serious; (2) the defendants acted "purposefully, knowingly, or recklessly with respect to the consequences of [their] actions"; and (3) defendants' actions were "objectively unreasonable -- that is, 'not rationally related to a legitimate governmental objective or . . . excessive in relation to that purpose.'" *Hardeman*, 933 F.3d at 827 (Sykes, J., concurring) (quoting *Kingsley*, 576 U.S. at 398); *see also Redman v. Downs*, 854 F. App'x 736, 738 (7th Cir. 2021).

Defendant moves for summary judgment on two main grounds: (1) plaintiff cannot satisfy the first element of his claim—conditions that were objectively serious; and (2) the elements of the claim aside, defendant was not personally involved in any alleged violation. (Dkt. 54, pg. 5–9.)

10

To recover damages under § 1983, a plaintiff must establish that a defendant was personally responsible for the deprivation of a constitutional right. *See Whitfield v. Spiller*, 76 F.4th 698, 706 (7th Cir. 2023). At the pleading stage, the court allowed plaintiff to proceed because plaintiff described a potentially systemic problem with unsanitary cells and smoke exposure. (*See* Dkt. 15 at 3.) As the court explained, the personal involvement of senior jail officials can be inferred at the pleading stage when the plaintiff alleges "potentially systemic" as opposed to "clearly localized" constitutional violations. *Smith*, 803 F.3d at 310 n.2 (7th Cir. 2015) (quoting *Antonelli v. Sheahan*, 81 F.3d 1422 (7th Cir. 1996)).

A court can continue to draw this inference at the summary judgment stage where a plaintiff has *brought forth sufficient evidence* demonstrating a problem that affected a large group of inmates on a continuous or nearly continuous basis. *See Gray*, 826 F.3d at 1008–09; *see Eason v. Pritzker*, No. 18-cv-2553, 2020 WL 6781794, at *5 (N.D. Ill. Nov. 18, 2020) (examples of potentially systemic violations include "vermin infestations, extreme temperatures, inadequate recreation or nutrition, or similar issues"). Here, plaintiff has at least created a disputed issue of fact as to defendant's knowledge of smoke exposure in Division 10 by introducing work orders that reflect that similar smoke incidents occurred across different tiers in the Division and required engineers to rectify approximately 50 times in 20 months. *See Willis v. Williams*, No. 17-cv-3297, 2022 WL 4599260, at *18 (N.D. Ill. Sept. 30, 2022) (strength of the inference depends on the number of prisoners exposed to a given condition and the frequency of that exposure). But even if plaintiff could establish the Sheriff's

11

requisite personal involvement, defendant's other argument that plaintiff has not described objectively serious deprivations is well-taken.

Jails are not required to provide a "maximally safe environment" free of pollution or safety hazards. *Carroll v. DeTella*, 255 F.3d 470, 472 (7th Cir. 2001). Rather, to constitute an objectively serious constitutional deprivation, the alleged condition must deprive a detainee of "'the minimal civilized measure of life's necessities.'" *Hardeman*, 933 F.3d at 820 (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981)). Life's minimal necessities include "reasonably adequate ventilation, sanitation, bedding, hygienic materials, and utilities." *Hardeman*, 933 F.3d at 820 (cleaned up).

The court assesses the severity, duration, and extent of harm caused by conditions to determine whether they rise to such a deprivation. *Hardeman*, 933 F.3d at 824; *Thomas v. Illinois*, 697 F.3d 612, 614-15 (7th Cir. 2012). Courts look to the Eighth Amendment standard for what constitutes an objectively serious deprivation. *Caldwell v. Woock*, No. 18-cv-1074, 2023 WL 3582349, at *4 (W.D. Wis. May 22, 2023) (citing *Thomas*, 39 F.4th 835, 841 (7th Cir. 2022) (applying substantial risk of serious harm standard to Fourteenth Amendment failure-to-protect claim); *Williams v. Ortiz*, 937 F.3d 936, 942 (7th Cir. 2019) (applying serious medical need for a Fourteenth Amendment medical care claim)); *see also Dyjak v. Harper*, No. 22-1419, 2023 WL 5928160, at *3 (7th Cir. Sept. 12, 2023) (requiring evidence of an "objectively serious threat" in detainee's conditions of confinement case). Thus, a detainee must generally demonstrate "extreme deprivations over an extended time" to establish a

12

constitutional violation. *Miller v. Winnebago Cnty. Sheriff's Off.*, No. 18 C 50334, 2019 WL 184078, at *2 (N.D. Ill. Jan. 14, 2019) (citing *Hudson v. McMillian*, 503 U.S. 1, 8–9 (1992); *Bell v. Wolfish*, 441 U.S. 520, 542 (1979).

Plaintiff's evidence falls short of that standard. Plaintiff has not brought forth sufficient evidence that either his cells' conditions or his exposure to smoke coming from vents deprived him of adequate sanitation or ventilation, respectively.

### A. Cell Conditions – Adequate Sanitation

Extremely unsanitary cell conditions and a complete lack of cleaning supplies can deny an inmate adequate sanitation. *See Vinning–El v. Long*, 482 F.3d 923, 923–25 (7th Cir. 2007) (reversing summary judgment when prisoner was deprived of basic sanitation items while in a cell for six days with blood and feces were smeared on the walls and there was no running water to allow cleaning of the cell); *Budd v. Motley*, 711 F.3d 840, 842 (7th Cir. 2013) (45-day confinement in over-crowded cell with broken windows, no working sink, toilet covered in mold and spider webs, and no cleaning supplies stated unconstitutional conditions). But here plaintiff's cell conditions were unpleasant, not extreme, and persisted only briefly. Plaintiff was able to use his own and jail-provided supplies to clean each of his permanent cells within a day or at most a "couple of days" for each cell. No reasonable jury could therefore find that plaintiff lacked the ability to maintain sanitation in the complained-of cells. *See Allen v. Hardy*, No. 11 C 4147, 2012 WL 5363415, at *5 (N.D. Ill. Oct. 26, 2012) (summary judgment entered for prison staff where inmate's requests for cleaning supplies were granted); *see also Murithi v. Hardy*, No. 13 C 00599, 2016 WL 890695,

13

at *7 (N.D. Ill. Mar. 9, 2016) (complaints of dust, dirt and bird excrement did not rise to a constitutional violation and plaintiff was allowed to clean his cell twice per week using towels and shampoo he purchased through commissary). And although plaintiff was not able to clean the two Cermak cells, both of those were merely temporary holding cells where he spent less than two days total combined.

It is also undisputed that plaintiff suffered no physical injury from the brief initial exposures to the unclean conditions, and he does not articulate any other actionable harm attributable to that exposure. The fact that he was not given "chemicals" or that the cleaning supplies were, in his view, "watered down," is not an actionable injury. Chemical-based cleaners are not one of life's necessities. *Myrick v. Anglin*, 496 Fed. Appx. 670, 676 (7th Cir. 2012) ("[a]lthough [inmate] did not receive the specific cleaning supplies he requested, [he] does not allege that he was unable to clean his cell with supplies available to him"); *see also Tucker v. Watson*, No. 20-cv-3026, 2021 WL 1131689, at *2 (C.D. Ill. Mar. 24, 2021) (no constitutional violation premised on inmate's allegations that he went four to six months without a toilet brush or the cleaning products "of his choice"); *Sanchez v. Walker*, No. 09 C 2289, 2010 WL 5313815, at *9 (N.D. Ill. Dec. 17, 2010) (no constitutional violation existed where, in the absence of cleaning supplies, inmate could have used available water and clothing to clean his cell).

In sum, the record here shows brief exposures to unpleasant cell conditions that did not result in harm and thus did not amount to a denial of adequate sanitation.

14

### B. Smoke Exposure – Adequate Ventilation

"[A] constitutional right to adequate ventilation exists, which, while not assuring the right to be free from all discomfort, will be violated if inadequate ventilation can be considered as constituting punishment of pretrial detainees." *Board v. Farnham*, 394 F.3d 469, 486 (7th Cir. 2005) (citing *Shelby County Jail Inmates v. Westlake,* 798 F.2d 1085, 1087 (7th Cir. 1986)); *Martin v. Tyson,* 845 F.2d 1451, 1456 (7th Cir. 1988). For example, "the flow of black fiberglass dust" into pretrial detainees' cells through the ventilation system, causing widespread frequent nosebleeds and dramatically worsened asthma that twice led to an asthmatic inmate being rushed to emergency room, constituted a sufficiently serious condition. *Id*. Plaintiff here did not similarly experience a routine flow of smoke due to poor ventilation. Rather, Plaintiff was exposed to smoke on three brief and discrete occasions over the course of a nearly two-year period. That limited duration of exposure does not describe a denial of adequate ventilation. *See Hecke v. Beck*, No. 23 C 286, 2025 WL 1650329, at *4 (N.D. Ind. June 6, 2025) (detainee who experienced five instances in one year of smoke inhalation when smoke came out of jail's vents failed to state a conditions-of-confinement claim); *see also Morissette v. DeTella*, No. 96 C 6798, 1997 WL 619851, *1 (N.D. Ill. Sept. 29, 1997) (45 minutes of exposure to engine fumes in cellhouse which caused prisoner to become dizzy and vomit, and which led to long-term headaches and dizzy spells, were not actionable because "brief and isolated exposure to engine exhaust does not violate the Constitution").

For problems with ventilation to satisfy the objective prong of an unconstitutional conditions claim, there must be evidence of a "direct physical manifestation of the harm caused by the poor ventilation, as well as the quite likely possibility for future health problems." *See Board,* 394 F.3d at 486; *accord Helling v. McKinney*, 509 U.S. 25, 35 (1993) (exposure to secondhand smoke may support a conditions-of-confinement claim, but inmate must demonstrate, among other things, that smoke caused or is likely to cause him serious health problems).

Plaintiff did not suffer a serious injury from the incidents of smoke exposure. Plaintiff experienced coughing, chest pains, and shortness of breath immediately after the incidents, and he did seek medical attention for these conditions. But the undisputed medical records establish that plaintiff reported that his chest pains and shortness of breath resolved shortly after the exposures. Plaintiff has testified that he continues to experience periodic coughs, which he presumably contends were caused by the smoke exposure, although he offers no support for this proposition. And his more recent x-rays and scans show no signs of lung disease.

In analogous "secondhand smoke" cases, these precise types of symptoms have been found not objectively serious. *See, e.g., Henderson v. Sheahan*, 196 F.3d 839, 846 (7th Cir. 1999) (breathing problems, chest pains, dizziness, sinus problems, headaches and loss of energy from secondhand smoke exposure were "relatively minor"); *Knox v. Butler*, No. 17-CV-572, 2020 WL 3412992, at *3 (S.D. Ill. June 22, 2020) (summary judgment warranted in secondhand tobacco smoke case where plaintiff described only symptoms of coughing, eyes watering, constant headaches,

16

and dizziness); *Gurley v. Sheahan*, No. 06 C 3454, 2009 WL 2178685, at *6 (N.D. Ill. July 21, 2009) (asthmatic inmate who complained about breathing difficulties due to exposure to secondhand smoke did not describe an objectively serious deprivation). And plaintiff's own beliefs about the cause of his current cough are also insufficient to create a question of fact. *See Vasquez v. Braemer*, No. 11 C 806, 2013 WL 4084284, at *14 (W.D. Wis. Aug. 13, 2013).

In sum, the undisputed evidence shows that plaintiff's exposure to smoke was brief and infrequent and did not result in serious injury. Plaintiff therefore has not shown that he was deprived of adequate ventilation.

\* \* \*

For all the reasons provided above, Plaintiff has failed to establish conditions sufficiently adverse to support a conditions-of-confinement claim. Summary judgment in Defendant's favor is therefore proper. Plaintiff's motion to "pause on summary judgment" is denied. Although Plaintiff filed this motion in May 2025 several months after briefing on the summary judgment motion was complete, the court construes Plaintiff's motion as a request under Federal Rule of Civil Procedure 56(d). Plaintiff explains that a doctor told him in May 2025 that he might have been exposed to asbestos at Cook County Jail based on the doctor's review of a January 2025 CT scan conducted of Plaintiff's chest. Plaintiff asks to "pause" summary judgment for additional time in order to investigate whether he was exposed to asbestos at the Jail. Plaintiff's motion does not meet the requirements for relief pursuant to Rule 56(d) because a potential asbestos exposure is irrelevant to the

17

claims in this case. *See Grayson v. O'Neill,* 308 F.3d 808, 816 (7th Cir. 2002) (Rule 56(d) motion is "flawed" if the evidence sought is not relevant to the case). Asbestos exposure was not referenced in the operative complaint, screening order, or any summary judgment materials.

## IV. Conclusion

Plaintiff's motion to "pause on summary judgment" [66] is denied. Defendant's motion for summary judgment [54] is granted. If plaintiff wishes to appeal, he must file a notice of appeal with this court within thirty days of the entry of judgment on the docket. *See* Fed. R. App. P. 4(a)(1). If plaintiff appeals, he will be liable for the $605 appellate filing fee regardless of the appeal's outcome. *See Evans v. Ill. Dep't of Corr.,* 150 F.3d 810, 812 (7th Cir. 1998). If the appeal is found to lack merit, plaintiff could be assessed a "strike" under 28 U.S.C. § 1915(g). Enter judgment and terminate civil case.

ENTER:

Date: July 29, 2025

Manish S. Shah
United State District Judge